**LEE M PERLMAN**
**ATTORNEY AT LAW**
**1926 GREENTREE ROAD, SUITE 100**
**CHERRY HILL, NEW JERSEY 08003**
**(856) 751-4224**
**ATTORNEY FOR DEBTORS, JOSEPH & MARIANNE FORD**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RE: | : | CHAPTER 13 |
| JOSEPH & MARIANNE FORD | : | CASE NO.: 14-34442 ABA |
| Debtors | : | **CERTIFICATION IN SUPPORT OF MOTION TO REINSTATE THE AUTOMATIC STAY AS TO BSI FINANCIAL SERVICES AND FOR FEES AND SANCTIONS** |

I, Lee M. Perlman, attorney for the debtors Joseph and Marianne Ford (hereinafter 'debtors'), being of full age certify the following in support of Debtors' Motion to Reinstate the Automatic Stay as to BSI Financial Services and for Fees and Sanctions:

1. Debtors' Chapter 13 Bankruptcy was filed on December 2, 2014.

2. BSI Financial Services (hereinafter "BSI") holds the first mortgage on debtors' property located at 5 Summit Road, Stratford, New Jersey 08084.

3. At the time the case was filed, the mortgage was held by Wells Fargo Bank, N.A. (hereinafter Wells Fargo) who filed Proof of Claim 14-1 in the amount of $48,480.03. The loan was subsequently transferred to BSI Financial Services on or about December 15, 2017 (See Exhibit A: Proof of Claim 14-1 and Exhibit B: Docket Entry #54 Transfer of Claim).

4. BSI filed a Certification of Default on September 10, 2018 and was granted relief from the Automatic Stay by Order dated September 25, 2018, for failure to make all required payments per a previous Order of this Court.

5. Attached to BSI's Certification of Default was an Order Reinstating the Automatic Stay, docket Entry #44 dated December 16, 2016 (See Exhibit C). BSI relied on this Order as a basis for its Certification of Default. However, this Order reinstated the stay on the debtors' 2nd mortgage, also held by Wells Fargo Bank, N.A., not the first mortgage held by BSI and previously held by Wells Fargo. No Motion for Relief was ever filed by Wells Fargo or BSI on the first mortgage. Therefore, BSI's Certification of Default was filed improperly.

6. Per the Proof of Claim, the terms of the first mortgage held by BSI Financial Services expire on July 1, 2019. The Chapter 13 Plan will not be complete until January 2020. As such, the debtors had proposed to pay the entire loan through their Chapter 13 Plan.

7. On March 4, 2016, debtors filed a Motion to Reduce Wells Fargo Bank, N.A.'s Proof of Claim 14-1, the first mortgage claim. Attached as Exhibit D is a copy of

the Order Reducing Proof of Claim of Wells Fargo and Determining Escrow Responsibility, Docket Entry #35 dated August 31, 2016.  Per the Order, Wells Fargo was to amend their Proof of Claim to apply post petition payments, Wells Fargo was to add any outstanding escrow deficiency to the amended Proof of Claim, the debtor was to make escrow payments for taxes and insurance exclusively going forward and the Chapter 13 Trustee was to pay Wells Fargo's Proof of Claim in full through the Chapter 13 Plan.

8.      To date, neither Wells Fargo nor BSI Financial Services has amended the Proof of Claim in contempt of this Court's Order.

9.      The debtors have continued to pay their escrow payments to Wells Fargo and subsequently BSI Financial Services in compliance with this Court's Order.

10.     The Certification of Default filed by BSI Financial Services seeks Principal and Interest payments on the loan and shows that BSI has been applying the escrow payments made by the debtors to Principal and Interest payments despite the Court's Order.

11.     The Chapter 13 Trustee has paid $32,996.16 towards Claim 14-1 to date.

12.     Based on the foregoing, debtors would ask that the Automatic Stay of BSI Financial Services be reinstated, that BSI Financial Services pay attorney fees in the amount of $1,700.00 (see time sheet and invoice attached as Exhibit E) and that BSI Financial Services pay sanctions for failure to comply with this Court's Order in the amount of $3,500.00.

I certify that the foregoing statements made by me are true and correct.  I am aware that if any of the statements are willfully false, I am subject to punishment.


11/6/18                                          /s/ Lee M. Perlman
DATE                                             LEE M. PERLMAN, ESQUIRE
                                                 Attorney for Debtors

# Exhibit A

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>JOSEPH P. FORD<br>MARIANNE FORD | Case Number<br>1434442 | |
|---|---|---|

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Wells Fargo Bank, N.A.

**COURT USE ONLY**

Name and address where notices should be sent:
Wells Fargo Bank, N.A.
Home Equity Group
1 Home Campus  X2303-01A
Des Moines, IA 50328-0001
Telephone number: 1-877-891-0002        email: HEQBANKRUPTCYCH13@wellsfargo.com

❑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
 (If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
Wells Fargo Operations Center
P.O. Box 31557  B6955-01B
Billings, MT 59107

Telephone number: 1-877-891-0002        email: HEQBANKRUPTCYCH13@wellsfargo.com

❑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $52,919.75

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
 (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>5718 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>WFCHEQ1434442NJM09735718<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ❑ Motor Vehicle ❑ Other

**Describe:** 5 SUMMIT RD  STRATFORD, NJ 08084

**Value of Property:** $

**Annual Interest Rate** 3.25% ❑ Fixed or ☑ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$462.17

**Basis for perfection:** Mortgage/Deed of Trust

**Amount of Secured Claim:**        $52,919.75 *

**Amount Unsecured:**            $

*\* or as allowed under Section 506*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❑ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

❑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

❑ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

❑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

❑ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

❑ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*\*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements or in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "**redacted**".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

☑ I am the creditor.　　☐ I am the creditor's authorized agent.　　☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)　　☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:　　Sara Morgan

Title　　VP  Loan Documentation

Company　　Wells Fargo Bank, N.A.　　/s/ Sara Morgan　　03/06/15

Address and telephone number (if different from notice address above):　　(Signature)　　(Date)

Telephone number:　　email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in this item.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10A (Attachment A) (04/13)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | JOSEPH P. FORD, MARIANNE FORD | **Case number:** | 1434442 |
| **Name of creditor:** | Wells Fargo Bank, N.A. | **Last four** digits of any number you use to identify the debtor's account: | 5718 |
| **Uniform Claim Identifier:** | WFCHEQ1434442NJM09735718 | | |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**        (1)    $ 0.00

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 3.25% | 08/25/14 | 10/23/14 | $ 420.60 |
| _____% | __/__/____ | __/__/____ | $ _____ |
| _____% | __/__/____ | __/__/____ | + $ _____ |
| **Total interest due as of the petition date** | | | $ 420.60 |

Copy total here ▶    (2) + $ 420.60

3. **Total principal and interest due**        (3)    $ 420.60

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. **Late charges** | 02/01/13, 03/04/13, 07/02/13, 12/3/13, 10/2/14,11/1/14 | (1) $ 41.57 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) $ _____ |
| 3. **Attorney's fees** | | (3) $ _____ |
| 4. **Filing fees and court costs** | | (4) $ _____ |
| 5. **Advertisement costs** | | (5) $ _____ |
| 6. **Sheriff/auctioneer fees** | | (6) $ _____ |
| 7. **Title costs** | | (7) $ _____ |
| 8. **Recording fees** | | (8) $ _____ |
| 9. **Appraisal/broker's price opinion fees** | | (9) $ _____ |
| 10. **Property inspection fees** | | (10) $ _____ |
| 11. **Tax advances (non-escrow)** | | (11) $ _____ |
| 12. **Insurance advances (non-escrow)** | | (12) $ _____ |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) $ _____ |
| 14. **Property preservation expenses. Specify:** | | (14) $ _____ |
| 15. **Other. Specify:** _____ | | (15) $ _____ |
| 16. **Other. Specify:** _____ | | (16) $ _____ |
| 17. **Other. Specify:** _____ | | (17) + $ _____ |
| 18. **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | (18) $ 41.57 |

Case 14-34442-ABA   Claim 6-1   Filed 03/11/15   Desc Main Document   Page 4 of 17

B 10A  (Attachment A) (04/13)                                                                Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☒ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with
    applicable non-bankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | | 07/31/14 | | |
| | Number of installment payments due | (1) | 3 | | |
| 2. **Amount of installment payments due** | 3 installments @ 140.20 | | $ 420.60 | | |
| | _____ installments @ _____ | | $ _____ | | |
| | _____ installments @ _____ | + | $ _____ | | |
| | **Total installment payments due as of the petition date** | | $ 420.60 | Copy total here ► (2) | $ 420.60 |
| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ► + | $ 41.57 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | | - | $ 0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | | | - | $ 0.00 |
| | **Total amount necessary to cure default as of the petition date** | | | (3) | $ 462.17 |

Copy total onto Item 4 of
Proof of Claim form

## Right to Foreclosure:

☑    **Have Possession of the Creditor's home equity line of credit agreement and Mortgage or Deed of Trust**

Debtor(s) executed Creditor's home equity line of credit agreement (the "Debt Agreement") and agreed to be bound by
its terms.   The Debt Agreement is secured by a mortgage or deed of trust.  Creditor is the original mortgagee/successor
or beneficiary of the mortgage or deed of trust.

# Wachovia Bank, National Association
# Prime Equity Line of Credit Agreement & Disclosure Statement

Date of Agreement: **September 27, 2004**

Maximum Credit Limit: $ **61200.00**

Borrower(s)

JOSEPH P FORD

MARIANNE FORD

The Prime Equity Line of Credit Agreement & Disclosure Statement ("Agreement") contains the terms which apply to the Prime Equity Line Account ("Account") with Wachovia Bank, National Association. The words "I," "me," and "my," which also mean "we," "us," and "our," if more than one Borrower, mean the person or persons signing this Agreement. The words "you," "your," and "yours" mean Wachovia Bank, National Association ("Wachovia Bank, N.A.").

## ACCESSING THE PRIME EQUITY LINE
Wachovia Bank, N.A. will establish an Account and issue to me Prime Equity Line Checks and if applicable law permits, a Credit Card Access Device ("Card"). The Prime Equity Line Checks and Card can be used to obtain Advances from my Account during the Draw Period, up to the amount of the Maximum Credit Limit established in this Agreement. Wachovia Bank, N.A. will charge all Advances obtained under the terms of this Agreement to my Account. Advances made pursuant to Prime Equity Line Checks will be for the amount of the Prime Equity Line Check. Advances made pursuant to the use of a Card will be for the amount of the purchase or for the amount of the Advance obtained with the Card at any ATM or other outlet.

If I have a Demand Deposit Account with you and I request you to initiate an Advance from my Account, so that items presented against my Demand Deposit Account which would otherwise overdraw my Wachovia Bank, N.A. Demand Deposit Account are honored, I agree that Wachovia Bank, N.A. may charge such Advances to my Account and that such Advances shall be in increments of $100.00.

I agree that from time to time Wachovia Bank, N.A. may establish other means of obtaining Advances from my Account, as permitted by applicable law, and that all such Advances will be charged to my Account pursuant to the terms of this Agreement.

I agree that any Prime Equity Line Checks or Cards that you supply to me are your property and must be returned to you immediately upon demand if I am in Default of this Agreement or my Advance privileges are terminated or suspended in accordance with the terms of this Agreement.

## MAXIMUM CREDIT LIMIT
My Maximum Credit Limit is indicated above. I agree never to allow the Outstanding Balance due on my Account to exceed the Maximum Credit Limit. I also agree that you are not obligated to pay any Advance or other charge against my Account that would make my Account Outstanding Balance exceed my Maximum Credit Limit. I agree to immediately repay, upon demand, any Outstanding Balance that exceeds the Maximum Credit Limit established hereunder. Any increases in my Maximum Credit Limit I request will require that a new application be approved in accordance with your then applicable underwriting standards and I must sign any additional agreements that in your opinion are necessary to secure your interest.

## DRAW PERIOD
Except as provided herein and unless terminated earlier in accordance with the terms of this Agreement, I may obtain Advances under the terms of this Agreement for twenty (20) years from the Date of Agreement ("Draw Period"). For Accounts secured by property located in Connecticut, the Draw Period is ten (10) years from the Date of Agreement.

## OBLIGATION TO LEND
You are absolutely obligated under the terms of this Agreement to make Advances not to exceed, at any one time in the aggregate, the amount indicated as the Maximum Credit Limit and I agree to repay any Advances under the terms of this Agreement. Your obligation to make Advances to me under this Agreement ends when the right to obtain Advances terminates at the end of the Draw Period or when such Advance privileges are suspended or terminated in accordance with the terms of this Agreement.

## FINANCE CHARGE ON MY ACCOUNT BALANCE

(a) My Account has a monthly billing cycle. A Finance Charge computed on a monthly periodic rate will be imposed, if at the end of any day of the billing cycle, there is a balance owing on my Account. The monthly periodic rate for an initial Advance, if any, made by you will begin to accrue on the date of this Agreement. The monthly periodic rate for any Advance other than an initial Advance will begin to accrue on the Transaction Date as indicated on my billing statement.

(b) You will figure the Finance Charge on my Account by applying the monthly periodic rate to the "average daily balance" owing on my Account (including current transactions). To calculate the "average daily balance" you will take the beginning balance of my Account each day, add any new Advances and Fees charged to the Account pursuant to the terms of this Agreement, and subtract any payments or credits. This gives you the daily balance. Then, you will add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives you the "average daily balance."

(c)  The Finance Charge imposed during a billing cycle will be calculated by applying the monthly periodic rate that is 1/12 of the corresponding **ANNUAL PERCENTAGE RATE** to the average daily balance.  The **ANNUAL PERCENTAGE RATE** and monthly periodic rate are variable rates and are subject to change on the first day of each billing cycle, if there was a prior change in the Index.  The "Index" is the "Prime Rate" published regularly in the "Money Rates" section of the Eastern edition of *The Wall Street Journal*.

(d)  If the Prime Rate becomes unavailable, you will select a new index which is based on a historical movement substantially similar to the original Index and the new index and margin will result in an **ANNUAL PERCENTAGE RATE** substantially similar to the rate in effect at the time the Prime Rate becomes unavailable.  You will give me notice of this change.

(e)  The corresponding **ANNUAL PERCENTAGE RATE** is effective as of the 1st day of the calendar month in which you receive your Statement and is based on the Prime Rate as published in the Eastern edition of *The Wall Street Journal* on the 25th day of the prior calendar month plus a Margin of ____0.00____%.  If more than one Prime Rate is published on the 25th day of the prior calendar month, you will use the higher rate as the Prime Rate.  If the Prime Rate is not published on the 25th day of the prior calendar month, the Index will be the Prime Rate published on the last business day prior to the 25th.

(f)  During the first twelve months of the Agreement, as measured from the date of the Agreement ("Initial Period"), if I take Advances totaling at least $5,000.00, the **ANNUAL PERCENTAGE RATE** will be discounted for the remaining months left in the Initial Period.  During the Initial Period, the **ANNUAL PERCENTAGE RATE** will equal the Index (WSJ Prime Rate) plus the **discounted Margin** which is ____0.00____%.  The **ANNUAL PERCENTAGE RATE** for the Initial Period is not based on the Margin that is used to make later rate adjustments.  After the Initial Period, the **ANNUAL PERCENTAGE RATE** for the remaining term of the Agreement will be determined in accordance with subsection (e) above.

(g)  Assuming that the discounted **ANNUAL PERCENTAGE RATE** is not in effect, the initial monthly periodic rate of ____0.375____% will apply to my average daily balance during my first billing cycle and the initial corresponding **ANNUAL PERCENTAGE RATE** will be ____4.500____%.  An increase in the **ANNUAL PERCENTAGE RATE** and monthly periodic rate will result in increased Finance Charges and minimum payment amounts.  The corresponding **ANNUAL PERCENTAGE RATE** for each billing cycle will be shown on my billing statement for that cycle.  The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

(h)  The maximum **ANNUAL PERCENTAGE RATE** will never exceed eighteen percent (18%).  In North Carolina, the maximum **ANNUAL PERCENTAGE RATE** will never exceed sixteen percent (16%).

**Other Charges.**  In addition to the **FINANCE CHARGE** which will be added to my Account each billing cycle, I will pay the following real estate closing and security filing fees:

| "X" = Wachovia Bank, N.A. Pays Fee | | | "X" = Wachovia Bank, N.A. Pays Fee | | |
|---|---|---|---|---|---|
| Survey | $_____ | ___ | Georgia Mortgage Fee | $_____ | ___ |
| Title Examination | $___25.00___ | ___ | Settlement Fee | $_____ | ___ |
| Title Insurance | $_____ | ___ | Points | $_____ | ___ |
| Recording Fee | $___70.00___ | ___ | Commitment Fee | $_____ | ___ |
| Appraisal Fee | $___50.00___ | X | Broker Fee | $_____ | ___ |
| Flood Certification Fee | $___15.00___ | ___ | Additional Settlement Fee | $_____ | ___ |
| Intangible Tax | $_____ | ___ | | $_____ | ___ |
| Document Stamp Tax | $_____ | ___ | TOTAL | $___160.00___ | ___ |

**WACHOVIA BANK, N.A. FEES PAID $_____50.00_____**        **CUSTOMER FEES PAID** $_____110.00_____

☒  **Closing Cost Repayment Option.**  If checked, I request that you pay the Other Charges indicated with an "X" above for me.  I will pay the remaining Other Charges not so indicated.  In consideration of your payment of the Other Charges indicated above I agree to reimburse you for the Other Charges that you have paid on my behalf, in the event I pay the entire Outstanding Balance and close this Account on or before one calendar year after the opening date of this Account.  If I pay the entire Outstanding Balance and close this Account after one year, but on or before two calendar years after the opening date of this Account, I agree to reimburse you fifty percent (50%) of the amount of closing costs you paid for me.  I understand that I may pay my entire Outstanding Balance at any time without having to reimburse you for the closing costs as long as my Account remains open.

**Statement.**  If I have an Outstanding Balance or a credit balance in excess of $1.00 or if there is any Finance Charge imposed during a billing cycle, you will send me a Statement.  I promise to pay you in accordance with the terms of this Agreement in United States Dollars drawn on an institution located in the United States.  I understand I am prohibited from using an Advance to make my payments on this Account.  I agree to be responsible for any fees or costs associated with the processing of my payments on my Account should I use a method of payment that results in extra costs or fees being assessed to you.

**Payment Schedule.**  During the Draw Period, I agree to pay the minimum monthly payment not later than the payment due date shown on my Statement as follows:

☒  Option A:  I will make a minimum monthly payment equal to the greater of the Finance Charge on the outstanding Advances plus accrued but unpaid Fees or $50.00.

☐  Option B:  I will make a minimum monthly payment of the greater of 1.5% of the Outstanding Balance shown on my Statement or $50.00.

Upon expiration of the Draw Period, I will make a minimum monthly payment of the greater of 2% of the Outstanding Balance shown on my Statement or $50.00 until the entire Outstanding Balance is paid in full.

If at any time, the Outstanding Balance is less than $50.00, the minimum monthly payment will be the Outstanding Balance.

For purposes of this Agreement, the term "Outstanding Balance" includes all unpaid Advances, accrued but unpaid Finance Charges and accrued but unpaid Fees permitted to be charged to my Account under the terms of this Agreement or the Security Instrument.

**Application of Payments.**  Unless otherwise indicated, your payments will be applied in the following order: First, to the accrued but unpaid promotional Finance Charges due; next to non-promotional Finance Charges due; next to any Fees that that have been charged in accordance with the terms of this Agreement. The remainder of any payment will be applied first to any unpaid promotional Advances and then to any non-promotional Advances.  Promotional Advances and Finance Charges refer to offers to use my Account on special terms that you may make to me from time to time; you will provide the terms of any promotional Advance or promotional Finance Charge at the time that you make the offer available.  I understand that making more than the minimum payment may not advance my next payment due date.

**Minimum Monthly Payment Change.**  Subject to your approval, during the Draw Period, I agree that I may change my minimum payment option to any option listed above upon written notice of my request to change my minimum payment option.

> **PAYMENT IN FULL.  I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, N.A. EQUITY LINE SERVICES, VA 0343, PO BOX 13327, ROANOKE, VA 24040.**

**Late Fee.**  I agree that any Late Fee imposed by you will be charged to my Account.

If this Agreement is governed by New Jersey law and all of a minimum monthly payment is not received within fifteen (15) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment.

If this Agreement is governed by New York law and all of a minimum monthly payment is not received within fifteen (15) days of the due date provided on my Statement, you will impose a Late Fee of two percent (2%) of the amount of the minimum monthly payment.

If this Agreement is governed by North Carolina law and all of a minimum monthly payment is not received within fifteen (15) days of the due date provided on my Statement, you will impose a Late Fee of four percent (4%) of the amount of the minimum monthly payment.

If this Agreement is governed by South Carolina law and is secured by a subordinate lien on real property and all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of the lesser of $14.00 or five percent (5%) of the amount of the minimum monthly payment but not less than $5.60. Otherwise, if all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment.

If this Agreement is governed by a law other than those listed in this Section (above) and all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment.

**Return Items Fee.**  If I make a payment to my Account by check or draft and the check or draft is returned unpaid for any reason, I agree to pay a charge of $20.00 for each returned check or draft.  If this Agreement is governed by Maryland law and I make a payment to my Account by check or draft and the check or draft is returned unpaid for any reason, I agree to pay a charge of $15.00 for each returned check or draft.  I agree that this fee will be charged to my Account.

**Stop Payment Fee.**  If I request you to stop payment on an Advance made with a Prime Equity Line Check, to the extent not prohibited by applicable law, I agree to pay your scheduled fee for such service.  I will be notified of the amount of such fee at the time that such action is requested.  I agree that this fee will be charged to my Account.

**Administrative/Servicing Fees.**  I agree that, if after closing, I request other services related to servicing or administering my Account for which you have a scheduled charge, to the extent not prohibited by applicable law, I will pay you the then current fee for such services or request if you agree to perform such services or request.  I will be notified of the amount of the fee at the time that such action is requested.  I agree that any such fees will be charged to my Account.

**Agreement Secured by Security Instrument.**  In addition to the protections given to you under this Agreement, a Security Instrument on real property (the "Property") described in the Security Instrument and dated the same date as this Agreement, protects you from possible losses which might result if I do not keep the promises which I make in this Agreement.  The Security Instrument describes how and under what conditions I may also be required to make immediate payment in full of all amounts I owe under this Agreement.

**Change of Terms of This Agreement.**  In addition to other rights you may have under the terms of this Agreement, you may change the terms and conditions of this Agreement when any of the following events shall occur:
  (1) if the index and margin used with this Account are no longer available;
  (2) if you make a change that I specifically agree to in writing;
  (3) if you make a change that will unequivocally benefit me throughout the remainder of the term of this Agreement; or
  (4) if you make any insignificant change in the terms of this Agreement.

**Suspension and/or Reduction of Credit Limit.**  I agree that you may prohibit additional Advances or reduce the Maximum Credit Limit when any of the following events shall occur:
  (1) if the value of the Property that secures this Agreement declines significantly below the Property's appraised value during the time of this Agreement;
  (2) if you reasonably believe I will be unable to fulfill the repayment obligations under this Agreement due to a material change in my financial circumstances;
  (3) if I am in default of any material obligations under this Agreement, such material obligations include, but are not limited to, all of my promises in this Agreement regarding the payment of money to you and the preservation of your rights in the Property;
  (4) if action by a governmental body does not allow you to impose the **ANNUAL PERCENTAGE RATE** currently applicable to this Agreement;

3

(5)  if action by a governmental body adversely affects the value of the Security Instrument to the extent that the value of the security interest is less than 120 percent of the amount of my Maximum Credit Limit;

(6)  if you are notified by a governmental agency that regulates your lending activities that continuing Advances constitutes an unsafe and unsound practice;

(7)  if during any period in which the **ANNUAL PERCENTAGE RATE** corresponding to the monthly periodic rate reaches the maximum interest rate allowed under this Agreement. Provided I am in compliance with the other terms of this Agreement, I understand you will reinstate credit privileges if the **ANNUAL PERCENTAGE RATE** declines below the maximum **ANNUAL PERCENTAGE RATE**; or

(8)  if I request that you suspend any Advance or reduce the Maximum Credit Limit.

**Reinstatement of Advance Privileges.**  Except as provided for in this Agreement, I understand that if my Advance privileges are suspended or my Maximum Credit Limit is reduced, it is my responsibility to request reinstatement of my Advance privileges that have been suspended.  If I request reinstatement of my Advance Privileges, I further understand that I may be required to pay for an appraisal of the Property to determine if the value has changed.

If you suspend Advances or reduce the Maximum Credit Limit, I understand you will mail or deliver written notice of your action no later than three business days after the action and that such notice will contain the specific reason for the action.

**Default/Termination.**  I will be in default if any of the following events shall occur:

(1)  if I fail to make my payments when they are due;

(2)  if I have engaged in fraud or material misrepresentation in connection with my Account;

(3)  if my action or inaction adversely affects the Property or your rights in the Property or I am in breach of any term of the Security Instrument; or

(4)  if I breach any term or this Agreement.

If I am in Default under the terms of this Agreement, you may, at your option and in your sole discretion, take the following action:

(1)  terminate my Advance privileges and demand the Outstanding Balance to be due and payable immediately in full in a single payment, with interest due on the Balance at the **ANNUAL PERCENTAGE RATE** as provided for in this Agreement until paid; or

(2)  temporarily or permanently prohibit additional Advances or reduce the Maximum Credit Limit without demanding payment in full.

If you do not immediately terminate the Advance privileges and demand repayment of the Outstanding Balance, such action shall not constitute a waiver of your right to subsequently terminate the Account or demand repayment of the Outstanding Balance at a later time, if the event of Default still exists or another event of Default occurs at that time.

In the event of Default, if I do not immediately pay the Outstanding Balance and if this obligation is referred to an attorney-at-law for collection, who is not a salaried employee of you, to the extent not prohibited by applicable law, you will have the right to collect attorney fees not exceeding fifteen percent (15%) of the Outstanding Balance along with court costs and expenses.  Any default of this Agreement will also constitute an event of Default of the Security Instrument securing my performance of the obligations set forth in this Agreement.  Upon Default, you may proceed to enforce the terms of this Agreement or enforce any rights that you may have under the Security Instrument.

**"DEFAULT IN THE PAYMENT OF THE LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THIS LOAN.  UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS LOAN.  IF YOU HAVE THIS RIGHT, THE LENDER IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT."**

**Termination by Less than All Borrowers.**  If one or more persons are liable under the terms of this Agreement and less than all of said persons request in writing that future Advances be terminated or temporarily suspended hereunder, you will block and otherwise suspend further Advance privileges.  Upon receipt of such notice from one or all of us, you will provide written notice to all Borrowers that the Advance privileges have been suspended.  I understand that said Advance privileges will not be reinstated by you until you receive a written request from all persons liable on this Account requesting reinstatement of the Advance privileges.  I further agree that any request to grant reinstatement will be made at the sole discretion of you and in accordance with your policies in effect at the time such request is made.

I understand that during the time of any such suspension or termination that I must continue to abide by the terms of the Agreement including, but not limited to the Payment Schedule.

**Voluntary Termination.**  I can cancel my Account at any time by destroying all of my unused Prime Equity Line Checks and any Card Access Devices that may have been issued in connection with my Account and sending you a signed letter requesting that you cancel my Account.  I understand that my obligations under this Agreement and any changes made under it prior to cancellation will continue to apply until I have completely paid the Outstanding Balance on the Account.

**Required Property and Flood Insurance.**  I agree to purchase and to continue to maintain property insurance (and flood insurance if so required) on the secured Property in an amount not less than the entire Outstanding Balance for all prior and current obligations secured by my Property or in such an amount satisfactory to you.  I understand I may purchase required property and flood insurance from anyone I choose who is acceptable to you.  I agree that in the event I am required to purchase property and/or flood insurance and fail to do so that you may purchase said insurance on my behalf and add the amount of the premium to my then Outstanding Balance.  I agree that you have an irrevocable power of attorney to file proofs of loss or other insurance claims and anything else to obtain insurance proceeds in my name.

**Assignment/Transfer of Account.**  I cannot transfer or assign my Account or this Agreement to any other person, however, I agree you can assign or transfer this Agreement and the Security Instrument securing this Agreement.

**Change of Address.**  I will advise you promptly if I change my mailing address or if I sell the Property securing this Account.

**Notices.** All written notices and statements will be considered given when placed in the United States mail, postage paid, and addressed to me at my current address as it appears in your records. If this is a joint Account, written notice to one person is notice to all persons.

**Removal of Security Interest.** At any time when the Outstanding Balance secured by the Security Instrument is zero, you shall, at my written request, execute a Satisfaction and provide me with a recorded copy. Absent my request, the Security Instrument will remain in full force and effect until the Draw Period has expired and the Outstanding Balance is paid in full.

**Governing Law.** I agree that this Agreement shall be governed by and interpreted entirely under the law of the State where the Property securing this Agreement is located and applicable federal law. If the Property securing the Agreement is located in Maryland, this Agreement is governed by MD Code Ann., Commercial Law §12-901 *et. seq.* and applicable federal law.

**Other Provisions.** Each of us who signed this Agreement is individually and jointly obligated for all payments due under this Agreement. If you request, I will give you any information needed to reevaluate my Account or my creditworthiness. You may, at any time, seek information about my financial condition from others including but not limited to obtaining a consumer report from a Consumer Reporting Agency. You may use the information obtained from a Consumer Reporting Agency to market additional products or services to me. In the event that the amount of interest on my Account exceeds the maximum permitted by law, you agree to repay me upon demand the amount paid which exceeds the maximum interest rate, or at your option, to reduce the then Outstanding Balance by the excess amount of interest. This Agreement constitutes the entire Agreement between the parties. If any part of this Agreement is not valid, all other parts will remain enforceable. I understand I should consult a tax advisor regarding the deductibility of interest and charges for my Account.

**Documentary Tax.** For loans secured by real property located in Florida, the state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**CAUTION – IT IS IMPORTANT THAT YOU READ ALL PAGES OF THIS AGREEMENT BEFORE YOU SIGN IT. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**

By signing below, I agree to all of the above terms and certify that I received a completed copy of this Agreement.

Borrower JOSEPH P FORD

Borrower MARIANNE FORD

Borrower

Borrower

**FOR OFFICE USE ONLY**

**Endorsement.**
Pay to the Order of _____

Without Recourse
Wachovia Bank, National Association

By: _____
Name: _____
Title: _____

5

# MY BILLING RIGHTS

### I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I SHOULD NOTIFY YOU IN CASE OF ERRORS OR QUESTIONS ABOUT MY STATEMENT.

If I think my Statement is wrong, or if I need more information about a transaction on my Statement, I should write you on a separate sheet at the address listed on my Statement. I should write you as soon as possible. You must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My full name and PEL Account Number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I should describe the item I am not sure about.

### MY RIGHTS AND YOUR RESPONSIBILITIES AFTER YOU RECEIVE MY WRITTEN NOTICE.

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the Statement was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my Statement that are not in question.

If you find that you made a mistake on my Statement, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my Statement. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my Statement was correct.

CAMDEN COUNTY, NJ
JAMES BEACH, COUNTY CLERK
MTG-OR BOOK 07622 PG 1965
RECORDED 11/03/2004 15:04:31
FILE NUMBER 2004137669
RCPT#: 169807; RECD BY: richier
RECORDING FEES 70.00
MARGINAL NOTATION 0.00

Prepared By/Return To:
DONALD MACDONALD
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA  24022

Parcel No:

# OPEN-END MORTGAGE

THIS MORTGAGE is made this day __27  September, 2004__ between the Mortgagor, __JOSEPH P. FORD__ __MARIANNE FORD__

(herein "Borrower"), and the Mortgagee, Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America, whose address is Wachovia Bank, National Association, 301 South College Street, NC 0630, Charlotte, North Carolina 28288-0630 (herein "Lender").

The Lender has made a loan to Borrower the maximum indebtedness at any one time shall not exceed U.S.$ __61200.00__ which loan is an open-end line of credit as evidenced by Borrower's Prime Equity Line of Credit Agreement and Disclosure Statement dated __09/27/04__ and extensions, modifications and renewals thereof (herein "Note") which provides for obligatory advances of all or part of the loan proceeds from time to time, subject to provisions in the Note.  The entire indebtedness evidenced by the Note, if not sooner paid, will be due and payable on __09/26/44__.

THIS MORTGAGE secures a Note that provides for changes in the interest rate, as more particularly described in said Note.  In case of a conflict between the Note and this Mortgage governing the terms of the remedies of default or termination of advances, the terms of the Note shall control.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described Property located in the County of __CAMDEN__, State of New Jersey:

DEED DATE:03/13/98 RECORDED: 03/26/98 BOOK/INST: 4939 PAGE: 302
TWP/BORO:STRATFORD BORO

LOT:4                          BLOCK:  106

which has the address of __5  SUMMIT  RD__
__STRATFORD NJ   08084__
and Parcel No._____ (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the Property covered by this Mortgage; and all of the foregoing, together with said Property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

**Any Rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenants and agreements of the Rider shall amend and supplement the covenants and agreements of this Mortgage, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record.  Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.  Obligation to Lend.** Lender is absolutely obligated under the terms of the Note to make advances not to exceed, at any one time in the aggregate, the amount stated in the Note and Borrower has agreed to repay any advances under the terms of the Note.  Lender's absolute obligation to make advances to

**23. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this section 23, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this section 23, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA 24022 of any default under the superior encumbrance and of any sale or other foreclosure action.

**IN WITNESS WHEREOF,** Borrower has executed this Mortgage and adopted as his seal the word ("SEAL") appearing beside his name.

Signed, sealed and delivered by:

_____    [SEAL]
Borrower
JOSEPH P. FORD

_____    [SEAL]
Borrower
MARIANNE FORD

_____    [SEAL]
Borrower

_____    [SEAL]
Borrower


STATE OF NEW JERSEY                    )
                                       ) ss
COUNTY OF CAMDEN                       )

BE IT REMEMBERED, that on this 27 day of SEPTEMBER , 2004 , in the County and State aforesaid, before me, a Notary Public authorized to take acknowledgements and proofs in said County and State, personally appeared JOSEPH P. FORD AND MARIANNE FORD

_____
_____
_____

who, I am satisfied is the Borrower named in and who executed the foregoing instrument and he did acknowledge that he signed, sealed and delivered same as his act and deed for the uses and purposes therein expressed.

[NOTARY SEAL]

_____
Signature of Notary Public

_____
Notary Public Name Typed or Printed

My commission expires: _____

ROBERT HOFFMAN
Notary Public of New Jersey
My Commission Expires May 1, 2003

5

CAMDEN COUNTY, NJ
JAMES BEACH, COUNTY CLERK
MTG MOD-OR BOOK 08374 PG 0225
RECORDED 11/01/2006 13:27:40
FILE NUMBER 2006125651
RCPT #: 433796; RECD BY: carmens
RECORDING FEES 40.00
MARGINAL NOTATION 0.00

**Prepared By/Return To:**
James O'neal
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010, VA 0343
Roanoke, VA 24022

**Parcel No:**

# MODIFICATION TO OPEN-END MORTGAGE

I, Joseph P Ford, Marianne Ford (herein "Borrower"), who reside at 5 Summit Rd, Stratford, Nj 08084, and the collateral address is 5 Summit Rd, Stratford, NJ 08084 (referred to in this Modification to Open-End Mortgage as "I," "me," or "my," whether one or more persons) enter into this Modification to Open-End Mortgage with Wachovia Bank, National Association ("Wachovia"), whose address is 301 South College Street, VA 0343, Charlotte, North Carolina 28288-0343, this 10/19/2006. Capitalized terms not defined herein have the same meaning as defined in the Open-End Mortgage.

I previously executed and delivered to Wachovia a Prime Equity Line of Credit Agreement and Disclosure Statement ("Note") dated 9/27/2004, which provides for Wachovia to extend credit to me from time to time in an aggregate amount not to exceed the principal sum of $61,200.00 U. S. Dollars. The Note is secured by an Open-End Mortgage of even date recorded 11/3/2004 in the public land records of CAMDEN County, New Jersey, at Book/Instrument 07622, Page 1965, ~~Lot~~, Block: . 106
Lot 4

I have requested Wachovia to decrease the maximum credit available under the terms of the Note and Open-End Mortgage, and Wachovia has agreed to do so in consideration of and subject to the terms and conditions stated in this Modification to Open-End Mortgage.

Wachovia and I hereby agree that:

1. The maximum credit available to me pursuant to the Note is hereby decreased to the principal sum of FIFTY TWO THOUSAND U. S. Dollars ($52,000.00) ("New Maximum Credit Available"), and the Open-End Mortgage is hereby amended to secure said New Maximum Credit Available.
2. All other provisions of the Open-End Mortgage shall remain in full force and effect except as specifically modified by this Modification to Open-End Mortgage.

**IN WITNESS WHEREOF,** Borrower has executed this Modification to Mortgage and adopted as his seal the word ("SEAL") appearing beside his name.

Signed, sealed and delivered by:

_____[SEAL]          _____[SEAL]
Borrower Joseph P Ford                            Borrower

_____[SEAL]          _____[SEAL]
Borrower Marianne Ford                            Borrower

_____[SEAL]          _____[SEAL]
Borrower                                                Borrower

Original Pel Visit Number:
Visit Number:

1 of 2

STATE OF NEW JERSEY )
 ) ss
COUNTY OF _____ *Camden* )

BE IT REMEMBERED, that on this *19th* day of *October*, *2006*, in the County and State aforesaid, before me, a Notary Public authorized to take acknowledgements and proofs in said County and State, personally appeared Joseph P Ford Marianne Ford

who, I am satisfied is the Borrower named in and who executed the foregoing instrument and he did acknowledge that he signed, sealed and delivered same as his act and deed for the uses and purposes therein expressed.

_____
Signature of Notary Public

*Robert Hoffman*
Notary Public Name Typed or Printed

[NOTARY SEAL.]

My commission expires: _____

ROBERT HOFFMAN
Notary Public of New Jersey
My Commission Expires May 1, 2008

Wachovia Bank, National Association

By: _____
Name: STEVE LORITSCH
Title: ASSISTANT VICE PRESIDENT

ATTEST: _____
Name: KIM HARRIS
Title: ASSISTANT SECRETARY

STATE OF VIRGINIA

COUNTY OF ROANOKE

I, _____, Notary Public for said County and State, certify that _____ personally came before me and acknowledged that he/she is the _____ of Wachovia Bank, National Association, a national banking association, and that by the authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _____ sealed with its corporate seal, and attested by its Secretary/Assistant Secretary.

Witness my hand and official seal this *25th* day of *October*, *2006*.

(Place Notary Stamp Here)

_____
Notary Public

*Gwen L Bowles*
Notary Public Name (Typed or Printed)

My commission expires:

OFFICIAL SEAL
NOTARY PUBLIC-COMMONWEALTH OF VIRGINIA
GWEN L. BOWLES
COUNTY OF ROANOKE
My Commission Expires
01/31/2008

Original Pel Visit Number: _____
Visit Number: _____

Account Number:

Original PEL Visit Number:

# PRIME EQUITY LINE OF CREDIT MODIFICATION AGREEMENT

I, Joseph P Ford and Marianne Ford, the Borrower(s) who signed below, referred to in this Prime Equity Line of Credit Modification Agreement ("Modification Agreement") as "I," "me," or "my," and Wachovia Bank, National Association , also referred to in this Modification Agreement as "you," "your," or "Wachovia" enter into this Modification Agreement this 10/19/2006.

I have requested Wachovia to modify my Prime Equity Line of Credit Agreement and Disclosure Statement ("Agreement") dated 9/27/2004 which has a maximum credit limit of U.S. $61,200.00 that I previously executed and delivered to Wachovia, and Wachovia has agreed to the modifications subject to the terms and conditions stated herein.  Unless otherwise defined herein, capitalized terms have the same meaning as defined in the Agreement.
For good and valuable consideration, the receipt of which is hereby acknowledged, Wachovia and I agree as follows:

## MAXIMUM CREDIT LIMIT

The Maximum Credit Limit under the Agreement is modified to $52,000.00.

## FINANCE CHARGES

[NA]  If checked, sub-section (e) of the section in the Agreement titled "Finance Charge on my Account Balance"  is deleted and replaced in its entirety with the following language:

(e) The monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** based on the Prime Rate as published in the Eastern edition of *The Wall Street Journal* on the 25th day of the prior calendar month plus a Margin of 0.00%.  If more than one Prime Rate is published on the 25th day of the prior calendar month, you will use the higher rate as the Prime Rate.  If the Prime Rate is not published on the 25th day of the prior calendar month, the Index will be the Prime Rate published on the preceding business day.  If there is a change to the Prime Rate as of the 25th day of the month, the Index will be changed as of the 1st day of the next calendar month.  Adjustments to the monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** resulting from such a rate change will be in effect for the entire billing cycle in which the rate change became effective and all future billing cycles until another such rate change becomes effective.

This rate change only applies to the revolving variable interest rate on my Account.

I understand and agree that Wachovia will only apply a reduced variable interest rate to Advances on my Account with interest rates higher than the reduced variable interest rate established herein, including any Advances made under the subsection of the "Finance Charge on my Account Balance" section that provides for a discounted Margin during the Initial Period, if applicable.

## OTHER CHARGES

In addition to the **FINANCE CHARGE** which will be added to my Account each billing cycle, I will pay the following Other Charges that are being charged for processing this Modification Agreement:

|  | "X" = Wachovia Pays Fee |  | "X" = Wachovia Pays Fee |
|---|---|---|---|
| Title Examination |  |  |  |
| Recording Fee | $80.00 | X |  |
| Appraisal Fee | $6.00 | X |  |
| Flood Certification Fee | $15.00 | X |  |
| Non-Recurring Intangible Tax On increase amount |  |  |  |
| Documentary Stamp Tax On increase amount |  |  |  |
| Recordation Tax |  |  |  |
| Mortgage Tax |  |  |  |
| Lien Protection Fee | $57.00 | X |  |
| **TOTAL FEES** | $158.00 |  |  |
| **WACHOVIA FEES PAID** | $158.00 |  | **CUSTOMER FEES PAID**   $0.00 |

☐ If checked, I authorize Wachovia to charge my Prime Equity Line of Credit Account for any Other Charges listed above that are payable by me.

Visit Number:

**EFFECTIVE MODIFICATION DATE**

By signing below, I agree that the modifications to my Account made in this Modification Agreement shall become effective the date this Modification Agreement is executed by me. Except as specifically changed by this Modification Agreement, all terms and conditions of the Prime Equity Line of Credit Agreement and Disclosure Statement and the Security Instrument securing the Prime Equity Line of Credit Agreement and Disclosure Statement shall remain in full force and effect.

**CAUTION – IT IS IMPORTANT THAT YOU READ ALL OF THIS MODIFICATION AGREEMENT BEFORE YOU SIGN IT.  DO NOT SIGN THIS MODIFICATION AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**

Wachovia Bank, National Association and I agree to all the terms contained in this Modification Agreement and executed this Modification Agreement the date and year first written above.

Borrower Joseph P Ford                                      Borrower Marianne Ford

Lender:  <u>Wachovia Bank, National Association</u>

By:

Name:  <u>Terry Meischeid</u>
Title:  <u>Vice President</u>
Date:

**WACHOVIA BANK, NATIONAL ASSOCIATION**

Visit Number:



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

March 20, 2010

Mr. James E. Hanson
Senior Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:  Applications to merge Wachovia Bank, National Association, Charlotte, North Carolina
     and Wachovia Bank of Delaware, National Association, Wilmington, Delaware with and
     into Wells Fargo Bank, National Association, Sioux Falls, South Dakota
     Application Control Number: 2009-ML-02-0012

Dear Mr. Hanson:

This letter is the official acknowledgement, authorization and certification by the Office of the
Comptroller of the Currency (OCC) that effective March 20, 2010 Wachovia Bank, National
Association, Charlotte, North Carolina and Wachovia Bank of Delaware, National Association,
Wilmington, Delaware merged with and into Wells Fargo Bank, National Association, Sioux
Falls, South Dakota, under the title of the latter.  As result of the merger, the OCC has
renumbered the charter number of Wells Fargo Bank, National Association (the resulting bank)
from charter number 1741 to charter number 1.

This letter is also the official authorization for Wells Fargo Bank, National Association to
operate the former main office of Wachovia Bank of Delaware, National Association and the
branch offices of Wachovia Bank, National Association and Wachovia Bank of Delaware,
National Association as branches of Wells Fargo Bank, National Association.  A list of branches
for the resulting bank will be sent under separate cover.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by e-mail at
Stephen.Lybarger@occ.treas.gov.  Please reference the application control number in any
correspondence.

Sincerely,

Stephen A. Lybarger

Stephen A. Lybarger
Large Bank Licensing Lead Expert

# Exhibit B

B2100A (Form 2100A) (12/15)

# United States Bankruptcy Court

_____ District Of New Jersey (Camden)

In re Joseph P. Ford_____,    Case No. 14-34442_____

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust
_____
Name of Transferee

Wells Fargo Bank, N.A.
_____
Name of Transferor

Name and Address where notices to transferee should be sent:

c/o BSI Financial Services
1425 Greenway Drive, Ste 400
Irving, TX  75038

Phone: 972-347-4350_____

Last Four Digits of Acct #: 4241_____

Court Claim # (if known): 14
Amount of Claim: $48,480.03
Date Claim Filed: 04/08/2015

Phone: 866-234-8271_____

Last Four Digits of Acct. #: 4241_____

Name and Address where transferee payments should be sent (if different from above):

c/o BSI Financial Services
PO Box 679002
Dallas, TX  75267-9002

Phone: 888-738-5873_____

Last Four Digits of Acct #: 4241_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Michelle R. Ghidotti-Gonsalves_____    Date: 12/15/2017_____
Transferee/Transferee's Agent

_Penalty for making a false statement:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 & 3571.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

October 3, 2017                                    6                          Sent via First Class Mail

JOSEPH FORD
MARIANNE FORD
5 SUMMIT RD
STRATFORD, NJ 08084

New Account Number: 
Old Account Number:

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred to BSI Financial Services, ("BSI Financial"), effective 09/26/2017. The transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan.

Wells Fargo Home Mortgage your prior servicer, was collecting your payments. Wells Fargo Home Mortgage will not accept any payments received by you after the day preceding 09/26/2017.

As your new servicer, BSI Financial will start accepting payments received from you on or after 09/26/2017.

BSI Financial will collect your payments going forward. As your new servicer, BSI Financial will start accepting payments received from you on or 09/26/2017.

**Send all payments due on or after 09/26/2017 to BSI Financial at this address:**
**BSI Financial Services**
PO Box 679002
Dallas, TX 75267

If you have any questions for either your prior servicer, Wells Fargo Home Mortgage or your new servicer BSI Financial, about your mortgage loan or this transfer, please contact them using the information below:

**Licensed as Servis One, Inc. dba BSI Financial Services**
BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

B2100B (Form 2100B) (12/15)

# United States Bankruptcy Court

_____ District Of  New Jersey (Camden)

In re  Joseph P. Ford _____,    Case No.  14-34442 _____

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

Claim No. 14____ (if known) was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the alleged transferor.  As evidence of the transfer of that claim, the transferee filed a Transfer of Claim Other than for Security in the clerk's office of this court on 12/15/2017 (date).

Name of Alleged Transferor

Wells Fargo Bank, N.A.

Name of Transferee

U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust

Address of Alleged Transferor:

P.O. Box 10335
Des Moines, IA 50306

Address of Transferee:

c/o BSI Financial Services
1425 Greenway Drive, Ste 400
Irving, TX  75038

| ~~DEADLINE TO OBJECT TO TRANSFER~~ |
|---|

The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.

Date:_____

_____
**CLERK OF THE COURT**

Exhibit C

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
2016-2158

Powers Kirn, LLC
ecf@powerskirn.com
728 Marne Highway, Suite 200
Moorestown, NJ 08057
856-802-1000

Order Filed on December 16, 2016
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In Re:

      Joseph P. Ford
      aka Joseph P. Kelly
      Marianne Ford

Case No.:   14-34442-ABA

Hearing Date:  10/25/2016

Judge:   Honorable Andrew B. Altenburg, Jr.

Chapter:  13

## CONSENT ORDER REINSTATING STAY AND PROVIDING OTHER RELIEF

The relief set forth on the following pages, numbered two (2) through three (3)     is

hereby **ORDERED**.

**DATED: December 16, 2016**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

**Page 2**

Debtor: Joseph P. Ford

aka Joseph P. Kelly and  Marianne Ford

Case No.:  14-34442-ABA

Caption of Order:  CONSENT ORDER REINSTATING STAY AND PROVIDING OTHER RELIEF

Upon the application to reinstate the stay as to certain real property known as 5 Summit Road, Stratford, NJ 08084 which stay was heretofore vacated for cause pursuant to Bankruptcy Code section 362(d) and Powers Kirn, LLC, Attorney for Wells Fargo Bank, N.A. as successor by merger to Wachovia Bank, N.A., appearing and for cause shown, it is

**ORDERED** as follows:

1.       The automatic the stay is hereby reinstated upon the conditions and terms more particularly provided hereinafter.

2.       Debtor(s) shall commence curing post petition arrears through October 17, 2016, in the sum of $2,275.57 as provided hereinafter.

| Qty | Item | Amount | (From - To) | | Extended Amount |
|-----|------|--------|-------------|---|-----------------|
| 13 | Payments @ | $140.20 | (07/17/2015-07/17/2016) | = | $1,822.60 |
| 3 | Payments @ | $150.99 | (08/17/2016-10/17/2016) | = | $452.97 |
| | Arrears to Cure: | | | = | $2,275.57 |

3.       Post petition arrears of $2,275.57 shall be cured through the debtor(s)' plan and are hereby added to the claim filed by the mortgagee.

4.       Debtor(s) shall resume regular monthly mortgage payments starting on November 17, 2016.

5.       Should debtor(s) default in any payment for a period exceeding thirty (30) days, upon certification of mortgagee's attorney, with notice to the trustee, debtor and debtor's attorney, if any, but without further hearing, the stay shall be vacated by further order of this Court.

6.       The movant shall serve this order on the debtor, any trustee and other party who entered an appearance on the motion.

**Page 3**

Debtor: Joseph P. Ford

aka Joseph P. Kelly and  Marianne Ford

Case No.: 14-34442-ABA

Caption of Order:  CONSENT ORDER REINSTATING STAY AND PROVIDING OTHER RELIEF

The undersigned hereby consent to the form and entry of the foregoing order.


/s/ Lee Martin Perlman

Lee Martin Perlman, Esquire

Attorney for Joseph P. Ford

aka Joseph P. Kelly and Marianne Ford


/s/ William M. E. Powers III

William M. E. Powers III

Attorney for Wells Fargo Bank, N.A. as successor by merger to Wachovia Bank, N.A.

Exhibit D

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

**LEE M. PERLMAN**

Attorney at Law

1926 Greentree Road, Suite 100

Cherry Hill, New Jersey 08003

856-751-4224

Attorney for Debtors



Order Filed on August 31, 2016
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Case No.:  14-34442 ABA

Chapter 13

Hearing Date:

Judge:  Andrew B. Altenburg

RE:  JOSEPH & MARIANNE FORD

## ORDER REDUCING PROOF OF CLAIM
## OF WELLS FARGO AND DETERMINING ESCROW RESPONSIBILITY

The relief set forth on the following pages, numbered two (2) through (2) is hereby
**ORDERED.**

**DATED: August 31, 2016**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

**LEE M. PERLMAN**
**ATTORNEY AT LAW**
**1926 Greentree Road Suite 100**
**Cherry Hill, New Jersey 08003**
**(856) 751-4224**
**ATTORNEY FOR DEBTORS, JOSEPH & MARIANNE FORD**

<table>
<tr><td colspan="3" align="center">UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY</td></tr>
<tr><td>RE:</td><td>:</td><td>CHAPTER 13</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>JOSEPH & MARIANNE FORD</td><td>:</td><td>CASE NO.: 14-34442 ABA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Debtors</td><td>:</td><td>**ORDER REDUCING PROOF OF**</td></tr>
<tr><td></td><td>:</td><td>**CLAIM OF WELLS FARGO AND**</td></tr>
<tr><td></td><td>:</td><td>**DETERMINING ESCROW RESPONSIBILITY**</td></tr>
</table>

This matter having been opened to the Court upon application of Lee M. Perlman, attorney for the debtors, Joseph and Marianne Ford for an Order Reducing Proof of Claim and Determining Escrow Responsibility, and for good cause shown;

IT IS HEREBY, ORDERED Wells Fargo will continue making post petition escrow payments for taxes and insurance.

IT IS FURTHER ORDERED that Wells Fargo will re-apply post petition payments which total $6,524.64 from the debtors to the escrow account.

IT IS FURTHER ORDERED that any outstanding escrow deficiency after crediting the account with debtors' post-petition payments at the time of this Order ($7,732.75) will be added to an amended Proof of Claim to be filed by Wells Fargo.

IT IS FURTHER ORDERED that the Chapter 13 Standing Trustee will be authorized to pay Wells Fargo's amended Proof of Claim and enter into a stipulation with the debtors to adjust the Chapter 13 Plan payments if necessary.

IT IS FURTHER ORDERED that from the date of this Order forward, Wells Fargo will apply moneys paid by the Trustee only to the amount on their amended Proof of Claim.

IT IS FURTHER ORDERED that Wells Fargo will be authorized to invoice to the debtors for post-petition escrow and shall send regular monthly statements reflecting escrow activity. Debtors shall be responsible for reimbursing Wells Fargo for any funds disbursed out of escrow.

IT IS FURTHER ORDERED that Wells Fargo will apply post-petition payments made by the debtors only to the escrow account that becomes due after the Proof of Claim is amended.

2

# Exhibit E

## CLIENT STATEMENT FOR LEGAL SERVICES RENDERED

CLIENT:                    Joseph & Maryianne Ford

TYPE OF MATTER:           Chapter 13

FEE:              Retainer:      N/A    Hourly Rate:  $400.00

| 01 MEMO OF LAW | 01 ANSWERED COMPLAINT | 15 CT. TIMW | 22 INVESTIGATION |
|---|---|---|---|
| 02 COURT | 10 TELEPHONE CALL | 16 ARBITRATION | 23 CLIENT CORR. |
| 03 EXAMINE RECORD | 11 MEETING WITH | 17 RESEARCH | 24 POST TRIAL MATT |
| 04 PREPARD FOR | 12 CONFERENCE | 18 COURT FILING | 25 MOTION |
| 05 PLEADING | 13 CLIENT CONFERENCE | 19 DOCUMENT PREP. | 26 TRIAL |
| 06 REVIEWED FILE | 14 TELEPHONE CONSULT | 20 CORRESPONDENCE | 27 HEARING |
| 07 REVIEWED DEP. | WITH CLIENT | 21 MAILING | 28 STL. NEG. |

| TASK: | TIME: |
|---|---|
| Client meeting to review Certification of Default | 1.0 |
| Emails to opposing counsel | 0.75 |
| Status updates and calls to client | 0.5 |
| Preparation and filing of Motion | 2.0 |

**TOTAL TIME**                         **4.25 hours**

## TOTAL AMOUNT DUE AND OWING          $1,700.00